# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MATTHEW X. WINTERS

                Plaintiff,

v.

CORPORAL JARVELA, CORPORAL RARIE, SERGEANT GRAY, CORRECTIONAL OFFICER BEDFORD, CORRECTIONAL OFFICER AYALA, CORPORAL MACDONALD, CAPTAIN BERANIS, CORRECTIONAL OFFICER LOESCH, SERGEANT REINERSMAN, and KATHLEEN SUMMERS,

                Defendants.

Case No. 25-CV-1135-JPS

**ORDER**

      Plaintiff Matthew X. Winters, a prisoner proceeding pro se and incarcerated at the Kenosha County Detention Center, filed a complaint in the above captioned action along with a motion to proceed without prepaying the full filing fee, or to proceed *in forma pauperis*. ECF Nos. 1, 2. On September 5, 2025, Plaintiff filed a motion to amend/or supplement the complaint. ECF No. 10. Plaintiffs are generally not allowed to supplement complaints; however, the document filed appears to be complete in itself, and the Court liberally construes Plaintiff's filing as an amended complaint. The Court will therefore grant Plaintiff's motion to amend and will instruct the Clerk of Court to file the amended complaint, ECF No. 10, with an attachment thereto, ECF No. 10-3. The remainder of this Order screens

Plaintiff's amended complaint and resolves his motion for leave to proceed without prepaying the filing fee and motion to appoint counsel.

1.  **MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE**

The Prison Litigation Reform Act ("PLRA") applies to this case because Plaintiff was a prisoner when he filed his complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the Court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. *Id.* § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

On September 3, 2025, the Court ordered Plaintiff to pay an initial partial filing fee of $0.00. ECF No. 9. The Court will grant Plaintiff's motion for leave to proceed without prepaying the filing fee. ECF No. 2. He must pay the remainder of the filing fee over time in the manner explained at the end of this Order.

2.  **SCREENING THE AMENDED COMPLAINT**

    **2.1   Federal Screening Standard**

Under the PLRA, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether a complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil

Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### 2.2 Plaintiff's Allegations

Plaintiff brings allegations against Defendants for various issues related to his confinement at Kenosha County Jail. ECF No. 10, 10-3.[1] The Court will only briefly summarize Plaintiff's claims because, as discussed

---

[1] Plaintiff included a list of claims along with his amended complaint. ECF No. 10-3. This information is helpful to the Court; however, in the future this type of information should be included in any amended complaint. The Court considers all of Plaintiff's allegations in its analysis below.

below, the Court finds that Plaintiff may not bring all of his claims in the same case. Plaintiff brings a claim against Defendant Jarvela for a July 2022 incident related to his refusal to process Plaintiff's grievance and withholding Plaintiff's rights under the PREA system. ECF No. 10-3 at 1. Plaintiff brings claims against Defendant Rarie for a February 2023 incident for limited Plaintiff's access to court by failing to submit a PREA report and mishandling a grievance. *Id.* at 2. Plaintiff brings a claim against Defendant Bedford for a February 2023 incident for harassing Plaintiff over the intercom and repeatedly calling him gay. *Id.* Plaintiff brings a claim against Defendant Ayala for a March and May 2023 incident for spreading sexually suggestive rumors to other inmates about Plaintiff being gay. *Id.* Plaintiff brings a claim against Defendant MacDonald for subjecting him to inhabitable living conditions in March 2023. *Id.* at 3. Plaintiff brings claims against Defendants Rarie and Beranis for a March 2023 access to courts issue for mishandling his grievances. *Id.* Plaintiff brings a claim against Defendant Loesch for an April 2023 incident involving excessive force. *Id.* Plaintiff brings a claim against Defendant Reinersman for an April 2023 incident for refusing to process his grievance. *Id.* at 4. Plaintiff also brings a claim against Reinersman for subjecting him to inhabitable living conditions in April 2023. *Id.* Finally, Plaintiff brings a claim against Defendant Summers for denying him inadequate medical treatment in April and May 2023. *Id.*

   2.3   Analysis

The Court finds that Plaintiff's amended complaint fails to comply with Federal Rules of Civil Procedure 18 and 20. While multiple claims against a single party are fine, a plaintiff cannot bring unrelated claims against different defendants in the same case. *George v. Smith*, 507 F.3d 605,

607 (7th Cir. 2007); Fed. R. Civ. P. 18(a) and 20(a)(2). A plaintiff may join multiple defendants in a single case only if the plaintiff asserts at least one claim against each defendant that arises out of the same events or incidents and involves questions of law or fact that are common to all the defendants. Fed. R. Civ. P. 20(a)(2); *George*, 507 F.3d at 607; *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012) (joinder of multiple defendants in one case "is limited to claims arising from the same transaction or series of related transactions").

Here, Plaintiff brings claims against many different defendants related to multiple different incidents. As such, the Court finds that Plaintiff's amended complaint violates Rules 18 and 20 because he seeks to bring unrelated claims against unrelated defendants. When a plaintiff has improperly joined unrelated claims against unrelated defendants, the court must reject the complaint "either by severing the action into separate lawsuits or by dismissing the improperly joined defendants." *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011) (citing Fed. R. Civ. P. 21). Rather than the Court deciding which claims to sever (remove from the case) or which defendants to dismiss, the Court will instead give Plaintiff an opportunity to choose which of the above-described claims he wants to pursue in this case, and which he wants to bring in separate cases. The Court will give the plaintiff a deadline by which to file an amended complaint that focuses on the related claim(s) of his choice. If he wishes to pursue the other unrelated claims, he may file separate complaints regarding those claims. If Plaintiff fails to file an amended complaint by the deadline, the Court will choose which claim(s) to allow Plaintiff to pursue and will dismiss any improperly joined claims/defendants. In amending his complaint, Plaintiff should consider the following information.

Plaintiff has no inherent constitutional right to a grievance system. *See Owens*, 635 F.3d at 953. That means he cannot state a claim against Defendants who failed to process his grievances. Plaintiff is not without recourse though because he may be excused from the exhaustion requirement if he can show that he "properly followed procedure and prison officials were responsible for the mishandling of his grievance…." *See Dole v. Chandler*, 438 F.3d 804, 811 (7th Cir. 2006).

Except in exceptional circumstances, verbal abuse or harassment from prison officials does not constitute cruel and unusual punishment. *See Beal v. Foster*, 803 F.3d 356, 357–58 (7th Cir. 2015); *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000), abrogated in part on different grounds by *Savory v. Cannon*, 947 F.3d 409, 423–24 (7th Cir. 2020) (*en banc*). But when the comments are repeated and of a certain nature, they may increase the plaintiff's risk of physical or psychological harm from fellow inmates. *See Beal*, 803 F.3d at 358–59. For example, statements by correctional officers made in front of other incarcerated persons about a plaintiff's sexual orientation could increase that plaintiff's risk of sexual assault or harassment. *Id.* In that scenario, ongoing verbal harassment may support an Eighth Amendment claim. *Id.*

A prisoner's claim of unconstitutional conditions of confinement is analyzed under the Eighth Amendment's cruel and unusual punishment clause. *See Farmer v. Brennan*, 511 U.S. 832, 834 (1994). A prisoner is entitled to live in conditions that do not amount to "punishment." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Detainees are entitled to be confined under humane conditions that provide for their "basic human needs." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "The Constitution does not mandate comfortable

Page 6 of 18
Case 2:25-cv-01135-JPS   Filed 10/10/25   Page 6 of 18   Document 12

prisons, but neither does it permit inhumane ones[.]" *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996).

To establish a constitutional violation with respect to an inmate's living conditions, he must be able to demonstrate both: (1) the conditions were objectively so adverse that they deprived him "of the minimal civilized measure of life's necessities," and (2) the defendants acted with deliberate indifference with respect to the conditions. *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (quoting *Farmer*, 511 U.S. at 834). "Life's necessities include shelter, heat, clothing, sanitation, and hygiene items." *Woods v. Schmeltz*, No. 14-CV-1336, 2014 WL 7005094, at *1 (C.D. Ill. Dec. 11, 2014) (citing *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006)); *see also Budd v. Motley*, 711 F.3d 840, 842–43 (7th Cir. 2013).

The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" on prisoners. *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). When a correctional officer is accused of using excessive force, the core inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *Santiago v. Walls*, 599 F.3d 749, 757 (7th Cir. 2010). Several factors are relevant to this determination, including the need for force, the amount of force applied, the threat the officer reasonably perceived, the effort made to temper the severity of the force used, and the extent of the injury caused to the prisoner. *Hudson*, 503 U.S. at 7; *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

Plaintiff may amend his complaint in accordance with this guidance on or before **October 31, 2025**. When writing his amended complaint, Plaintiff should provide the Court with enough facts to answer the following questions: (1) Who violated his constitutional rights?; (2) What did each person do to violate his rights?; (3) Where did each person violate his rights?; and (4) When did each person violate his rights? Plaintiff's amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it does need to provide the Court and each Defendant with notice of what each Defendant allegedly did or did not do to violate his rights.

The Court is enclosing a copy of its amended complaint form and instructions. Plaintiff must list all of the defendants in the caption of his amended complaint. He should use the spaces on pages two and three to allege the key facts that give rise to the claims he wishes to bring, and to describe which defendants he believes committed the violations that relate to each claim. If the space is not enough, Plaintiff may use up to five additional sheets of paper.

Plaintiff is advised that the amended complaint must bear the docket number assigned to this case and must be labeled "Amended Complaint." The amended complaint supersedes the prior complaints and must be complete in itself without reference to the prior complaints. *See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1056 (7th Cir. 1998). In *Duda*, the appellate court emphasized that in such instances, the "prior pleading is in effect withdrawn as to all matters not restated in the amended pleading." *Id.* at 1057 (citation omitted). If an amended complaint is received, it will become the operative complaint in this action, and the Court will screen it in accordance with 28 U.S.C. § 1915A.

### 3. MOTION TO APPOINT COUNSEL

The Court will deny Plaintiff's motion to appoint counsel without prejudice. ECF No. 7. As a civil litigant, Plaintiff has "neither a constitutional nor statutory right to a court-appointed attorney." *James v. Eli*, 889 F.3d 320, 326 (7th Cir. 2018). However, under 28 U.S.C. § 1915(e)(1), a "court may request an attorney to represent any person unable to afford counsel." A court should seek counsel to represent a plaintiff if: (1) he has made reasonable attempts to secure counsel; and (2) "'the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it.'" *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (quoting *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc)). Whether to appoint counsel in a particular case is left to a court's discretion. *James*, 889 F.3d at 326; *McCaa v. Hamilton*, 893 F.3d 1027, 1031 (7th Cir. 2018).

While framed in terms of a plaintiff's capacity to litigate, this discretion must also be informed by the realities of recruiting counsel in this District. When a court recruits a lawyer to represent a pro se party, the lawyer takes the case pro bono. Unlike a lawyer appointed to represent a criminal defendant during his prosecution, who is paid by the government for his work, an attorney who takes a prisoner's civil case pro bono has no promise of compensation.

It is difficult to convince local lawyers to take such cases. Unlike other districts in this Circuit, *see, e.g.*, L.R. 83.35 (N.D. Ill.), the Eastern District of Wisconsin does not employ an involuntary appointment system for lawyers admitted to practice in the District. Instead, the District relies on the willingness of lawyers to sign up for the Pro Bono Attorney Panel and, once there, accept appointments as needed. *See* Pro Bono Program, *available at*: http://www.wied.uscourts.gov/pro-bono-program.

The District is grateful to the lawyers who participate in the Pro Bono Program, but there are never enough volunteers, and those who do volunteer rarely take more than one or two cases a year. This is understandable, as many are already busy attending to fee-paying clients. Although the Pro Bono Program does provide for payment of certain litigation expenses, it does not directly compensate a lawyer for his or her time. Participants may seek attorney's fees when permitted by statute, such as in successful § 1983 cases, but they will otherwise go unpaid. The small pool of attorneys available to this District for pro bono appointments stands in stark contrast to that of the Court of Appeals, which regularly recruits counsel from across the nation to represent pro se plaintiffs on appeal. *See, e.g., James*, 889 F.3d at 323 (appointing counsel from Washington, D.C. to represent the pro se appellant); *McCaa*, 893 F.3d at 1029 (same).

Against the thin ranks of ready and willing counsel rises the overwhelming tide of pro se prisoner litigation in this District.[2] In 2010, approximately 300 civil actions were filed by prisoner litigants. More than half sought habeas corpus relief, while the remainder were § 1983 actions alleging violations of constitutional rights. Since then, the number of habeas corpus cases has remained largely steady at around 130 per year, while the

---

[2]Although non-prisoner pro se litigants may also be considered for the appointment of counsel under § 1915, the Court does not address that set of pro se litigants here for a few reasons. First, the volume of non-prisoner pro se litigation is miniscule compared to that brought by prisoners. Second, prisoners are much more likely to request the appointment of counsel. Paradoxically, prisoners are usually far better equipped to litigate than non-prisoners, as prisoners have access to electronic filing, institution law libraries, and fellow prisoners who offer services as "jailhouse lawyers." Yet, learning a little of the legal system means that prisoners know they can request the appointment of pro bono counsel, which they do with regularity.

volume of § 1983 lawsuits has skyrocketed. About 499 § 1983 actions were filed in 2022, and another 571 in 2023—each significantly more than the entirety of the District's civil prisoner filings from years earlier. In 2024, § 1983 actions numbered 582. All told, well over a third of the District's new case filings are submitted by unrepresented inmates. On its best day, this District has the resources to realistically consider appointment of counsel in only a tiny fraction of these cases.

Finally, it must be remembered that, when a court determines that counsel recruitment is appropriate, it can take months to locate a willing lawyer. This delay works to the detriment of all parties and contravenes Congress's instruction in Federal Rule of Civil Procedure 1 that district courts must endeavor to secure the "just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. Thus, looming large over each request for counsel are a court's ever-more-limited time and resources.

With these considerations in mind, the Court returns to the question presented: whether counsel can and should be recruited to represent Plaintiff at this stage in this case. First, a court asks whether the litigant has made "reasonable" efforts to obtain his own representation. *Pruitt*, 503 F.3d at 655; *Jackson v. County of McLean*, 953 F.2d 1070, 1073 (7th Cir. 1992). It is a question not often litigated; many district court judges either overlook arguably unreasonable efforts at obtaining counsel, or they impose eminently practical requirements such as the submission of evidence demonstrating that the prisoner has tried and failed to secure representation from several lawyers. *See, e.g.*, *Kyle v. Feather*, No. 09-cv-90-bbc, 2009 WL 2474627, at *1 (W.D. Wis. Aug. 11, 2009).

The first element of *Pruitt* is fairly easy to satisfy, but it is not toothless, and it is not a mere technical condition of submitting a certain

Page 11 of 18
Case 2:25-cv-01135-JPS     Filed 10/10/25     Page 11 of 18     Document 12

number of rejection letters. If it was, then a Wisconsin prisoner litigating a § 1983 action could submit rejection letters from ten randomly selected criminal defense lawyers from Nevada and call his work complete. This cannot be. The purpose of the reasonable-efforts requirement is to ensure that if a court and private lawyers must expend scarce resources to provide counsel for a prisoner, he has at least made a good-faith effort to avoid those costs by getting a lawyer himself. To fulfill this duty, a pro se prisoner should reach out to lawyers whose areas of practice suggest that they might consider taking his case. If he learns that some of the lawyers he has contacted do not, he should reach out to others before he concludes that no one will help him.

Plaintiff indicates that he contacted various attorneys to take his case ECF No. 7. Plaintiff does not, however, provide any evidence of his efforts to locate counsel. Regardless, however, Plaintiff also does not satisfy the second *Pruitt* factor.

Plaintiff's request must also succeed on the second *Pruitt* question: whether the difficulty of the case exceeds his capacity to coherently present it. This assessment must be made in light of the particular capabilities and circumstances presented by each pro se litigant. *James*, 889 F.3d at 326–27. The Court of Appeals explains:

> The second step is itself grounded in a two-fold inquiry into both the difficulty of the plaintiff's claims and the plaintiff's competence to litigate those claims himself. The inquiries are necessarily intertwined; the difficulty of the case is considered against the plaintiff's litigation capabilities, and those capabilities are examined in light of the challenges specific to the case at hand. Ultimately, the question is not whether a lawyer would present the case more effectively than the pro se plaintiff; if that were the test, district judges would be required to request counsel for every indigent litigant. Rather,

Page 12 of 18
Case 2:25-cv-01135-JPS    Filed 10/10/25    Page 12 of 18    Document 12

> the question is whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself. Notably, this inquiry extends beyond the trial stage of the proceedings. The relevant concern is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty. This includes all of the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial.

*Id.* (citations and quotations omitted). While a court need not address every concern raised in a motion for appointment of counsel, it must address "those that bear directly" on the individual's capacity to litigate his case. *McCaa*, 893 F.3d at 1032.

The balancing contemplated in the second *Pruitt* step must be done against the backdrop that district courts cannot be expected to appoint counsel in circumstances which are common to all or many prisoners. *See Bracey v. Grondin*, 712 F.3d 1012, 1017–18 (7th Cir. 2013); *Pruitt*, 503 F.3d 647, 656 (observing that the Seventh Circuit has "resisted laying down categorical rules regarding recruitment of counsel in particular types of cases"); *Harper v. Bolton*, 57 F. Supp. 3d 889, 893 (N.D. Ill. 2014). Doing so would place untenable burdens on court resources. It would also turn the discretion of § 1915(e)(2) on its head, making appointment of counsel the rule rather than the exception.

Several pronouncements from the Court of Appeals appear to be in tension with this principle. First, the Seventh Circuit notes that "complexity increases and competence decreases as a case proceeds to the advanced phases of litigation." *James*, 889 F.3d at 327. It deems the "[a]dvanced phases" to include those from discovery onward. *Id.*; *McCaa*, 893 F.3d at

Page 13 of 18
Case 2:25-cv-01135-JPS    Filed 10/10/25    Page 13 of 18    Document 12

1032. But nearly every prisoner case proceeds to discovery, as the district court applies exceedingly lenient review during initial screening.

Second, the Seventh Circuit instructs that district courts should evaluate a prisoner's competency irrespective of the involvement of a "jailhouse lawyer." *McCaa*, 893 F.3d at 1033; *Walker v. Price*, No. 17-1345, 2018 WL 3967298, at *5 (7th Cir. Aug. 20, 2018). How courts should do this is not clear. A court rarely knows whether a filing was prepared by the plaintiff or someone helping him. And if a court does know that the plaintiff is receiving help, how can it assess his ability to litigate without knowing which portions of the filings are his work, and which come from the jailhouse lawyer? In *Walker*, the court determined that the inmate's work product decreased in quality after his jailhouse lawyer was transferred to another prison. 2018 WL 3967298, at *6. Yet a savvy prisoner, looking to secure counsel for himself, could do this on purpose, crafting his filings to downplay his own litigation capabilities. A court would have no way to assess whether the inmate is sandbagging it.

Finally, the Court of Appeals indicates that claims involving the state of mind of the defendant, such as those involving deliberate indifference, are particularly complex. *James*, 889 F.3d at 327–28; *McCaa*, 893 F.3d at 1032. Yet a government official's culpable mental state is the foundation for most constitutional claims. Indeed, it is often the defining characteristic that sets § 1983 claims apart from their state-law tort analogues. Deliberate indifference is essential to nearly all claims of cruel and unusual punishment, excessive force, mistreatment of medical needs, and First Amendment and due process violations. *See Kingsley v. Henderson*, 135 S. Ct. 2466, 2473 (2015); *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Hambright v. Kemper*, 705 F. App'x

461, 462 (7th Cir. 2017); *Milton v. Slota*, 697 F. App'x 462, 464 (7th Cir. 2017) ("*[N]egligently* inflicted harm does not amount to a constitutional violation.") (emphasis in original). Taken together, these claims comprise the vast majority of prisoner litigation in this District. If state-of-mind issues are generally beyond the ability of most pro se litigants to prove, then a court likely would need to appoint counsel in nearly every prisoner case. This is plainly impossible.

The guiding rule has always been that appointment of counsel is the exception rather than the rule in pro se prisoner litigation. Yet a confluence of all-too-common circumstances—discovery, jailhouse lawyers, and claims concerning state of mind—militate in favor of the appointment of counsel. As the list of reasons to appoint counsel grows, the reasons not to do so shrink. This District's resources have not kept pace.

Against this backdrop, the Court finds that Plaintiff has not presented sufficient evidence and argument showing that he cannot litigate or try this matter competently on his own. Plaintiff indicates that he is not confident in his ability to represent himself, that he is indigent and had been homeless, and that he suffers from various mental health issues. ECF No. 7.

It is true, as Plaintiff intuits, that a lawyer would be helpful in navigating the legal system; trained attorneys are of course better positioned to successfully litigate cases. But Plaintiff's lack of legal training and education brings him in line with practically every other prisoner or former prisoner litigating in this Court. Further, the Court will assist Plaintiff in this regard (as it does with all prisoner litigants) by providing copies of the guides entitled "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions." Thus, ignorance of the law or court procedure is generally not a qualifying reason

for appointment of counsel. Plaintiff has not demonstrated that his case is exceptional to require counsel. The Court will therefore deny Plaintiff's motion, without prejudice, and if the case proceeds past summary judgment, the Court will reconsider any renewed motion for counsel at a later time.

## 4. CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed without prepaying the filing fee, ECF No. 2, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion to appoint counsel, ECF No. 7, be and the same is hereby **DENIED without prejudice**;

**IT IS FURTHER ORDERED** that Plaintiff's motion to amend and/or supplement the complaint, ECF No. 10, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the Clerk of Court docket the amended complaint, ECF No. 10, with an attachment, ECF No. 10-3;

**IT IS FURTHER ORDERED** that the amended complaint, ECF Nos. 10, 10-3, violates Federal Rules of Civil Procedure 18 and 20; Plaintiff may submit an amended complaint on or before **October 31, 2025**;

**IT IS FURTHER ORDERED** that the Clerk's Office mail Plaintiff a blank prisoner amended complaint form and a copy of the guides entitled "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions," along with this Order;

**IT IS FURTHER ORDERED** that the agency having custody of Plaintiff shall collect from his institution trust account the $350.00 balance of the filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income

credited to Plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Plaintiff is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this Order along with his remaining balance to the receiving institution; and

**IT IS FURTHER ORDERED** that a copy of this Order be sent to the officer in charge of the agency where Plaintiff is confined.

Dated at Milwaukee, Wisconsin, this 10th day of October, 2025.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

Plaintiffs who are inmates at Prisoner E-Filing Program institutions shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. Prisoner E-Filing is mandatory for all inmates at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility.

Plaintiffs who are inmates at all other prison facilities, or who have been released from custody, will be required to submit all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

**DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.

Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.